PETER A. WARD, as Receiver of the Property and Effects of NORMAN PETRIE, Respondent, *v.* NORMAN PETRIE and FLORA PETRIE, Appellants.

1. RECEIVER IN SUPPLEMENTARY PROCEEDINGS — INABILITY TO MAINTAIN ACTION FOR DAMAGES FOR CONSPIRACY TO PREVENT COLLECTION OF DEBT.　A receiver in supplementary proceedings has no authority, as such, to maintain an action at law to recover damages from the judgment debtor and another for a fraudulent conspiracy to prevent the collection of the judgment creditor's debt (such as a transfer of the debtor's property by a chattel mortgage in fraud of creditors), carried into effect before the entry of judgment and the commencement of the proceedings which resulted in the appointment of the receiver.

2. ABSENCE OF STATUTORY AUTHORITY.　The maintenance of such an action is not within the powers conferred by the Code of Civil Procedure upon receivers in supplementary proceedings, nor is it authorized by the act (L. 1858, ch. 314, amd. L. 1894, ch. 740) declaring the powers of receivers and other trustees.

3. RIGHT OF ACTION, IF ANY, CONFINED TO JUDGMENT CREDITOR. Even if a judgment creditor can maintain an action at law to recover damages on account of the fraudulent transfer of the debtor's property made before he recovered judgment or had any lien (which is not decided), such a right of action can only be asserted, if at all, by the creditor himself in his own name and not through a receiver in supplementary proceedings.

4. CAPACITY TO SUE DISTINGUISHED FROM RIGHT TO MAINTAIN ACTION. The ground of demurrer, that "the plaintiff has not legal capacity to sue" (Code Civ. Pro. § 488), does not apply to a receiver duly appointed in supplementary proceedings; and the right to claim that he cannot maintain the action by reason of the nature of the relief sought is not waived by omitting to raise, by demurrer or answer, the question of his capacity to sue.

*Ward* v. *Petrie*, 92 Hun, 605, reversed.

(Argued October 27, 1898; decided November 22, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fourth judicial department, entered January 3, 1896, affirming a judgment of the County Court of Jefferson county in favor of the plaintiff entered upon a verdict, and an order denying a motion for a new trial.

On the 16th of August, 1893, one Jesse Reed commenced an action in the Supreme Court against the defendant Norman Petrie to recover the sum of $600, for work performed by said Reed as a farm laborer upon the farm of said Petrie. Issue having been joined in said action it was tried on the 15th of February, 1894, and after five o'clock in the afternoon when it was too late to enter judgment on that day, a verdict was rendered in favor of the plaintiff therein for the sum of $634.50. The next day at ten minutes after ten judgment was entered upon the verdict in the county clerk's office of Jefferson county for the sum of $712.56 damages and costs. An execution was at once issued to the sheriff of said county, in which the judgment debtor then resided, and it was returned unsatisfied on the 21st of February, 1894. On February 23rd, 1894, proceedings supplementary to execution based upon said judgment were instituted in the usual form and resulted in the appointment of plaintiff as receiver therein by an order dated March 10th, 1894, followed by the filing of the proper receiver's bond on the 17th of March, 1894. The order requir-

ing the judgment debtor to appear for examination was served upon him February 24th, 1894.

This action was commenced in the County Court of Jefferson county about May 1st, 1894. It is alleged in the complaint, and evidence was given tending to show that, at about seven o'clock in the morning of February 16th, 1894, said Norman Petrie executed and delivered to his sister, Flora Petrie, a chattel mortgage upon a large quantity of personal property to him belonging, situated upon his farm in the town of Orleans, county of Jefferson; that said mortgage was at once duly filed in the proper office, but the same was colorable merely, and was given without consideration pursuant to a conspiracy entered into between the defendants to cheat and defraud the creditors of the said Norman Petrie, and especially the said Jesse Reed, and to prevent the collection of said judgment to be entered on the verdict in his favor; that pursuant to said conspiracy the said Flora took possession of the mortgaged property and advertised the same for sale on the 19th of March, 1894, when she bid in substantially the whole thereof, and is now in possession claiming to be the owner, with knowledge at all times of the fraudulent intent of the said Norman in the execution and delivery of the mortgage. The complaint closes in these words: "That, by reason of such conspiracy and the acts of defendants in pursuance thereof, the trust estate and rights of plaintiff have been damaged in the sum of $800. * * * Wherefore, the plaintiff demands judgment for the sum of $800, besides costs." There was no allegation of title to the property in the plaintiff, or of a conversion thereof by the defendants. The defendants served separate answers, putting at issue the more important allegations in the complaint, and upon the trial they raised, by appropriate objections, motions and exceptions, the question whether the complaint stated a cause of action, and, if so, whether the County Court had jurisdiction thereof.

It appeared upon the trial that, on February 20th, 1894, four days before the order in supplementary proceedings was served, the defendants executed and acknowledged an instru-

ment under seal, whereby, after reciting that Norman Petrie owned said farm and that it was incumbered by three mortgages, the third, amounting to about $2,750, being owned by the said Flora, it was agreed "that said Norman do and hereby does transfer to the said Flora Petrie the possession of said farm; that said Flora Petrie agrees to and hereby does take possession of said farm, to receive and hold possession thereof as mortgagee in possession." On the same day Flora Petrie took possession of the real estate, and at the same time she also took possession of the personal property under the chattel mortgage, which contained the usual danger clause, and she was in possession thereof before the supplementary proceedings were instituted. The chattel mortgage purports to have been given mainly as collateral and further security to said third mortgage on the real estate.

The jury rendered a verdict in favor of the plaintiff, as receiver, against both defendants for the sum of $795.28. Judgment was entered accordingly, and from the judgment of the General Term affirming the same an appeal was taken by the defendants to this court.

*Wayland F. Ford* for appellants. This action cannot be maintained by the plaintiff. The receiver appointed in supplementary proceedings is only vested with a title to debtor's property by virtue of sections 2468 and 2469 of the Code. (*Pettibone* v. *Drakeford*, 37 Hun, 628; *Bostwick* v. *Menck*, 40 N. Y. 383; *Metcalf* v. *Del Valle*, 19 N. Y. Supp. 16; *D. M. B. Co.* v. *Reggio*, 34 N. Y. Supp. 457; *Osborne* v. *Moss*, 7 Johns. 160; *Hawes* v. *Leader*, Cro. Jac. 270; *Brownell* v. *Curtis*, 10 Paige, 210; *Olney* v. *Tanner*, 10 Fed. Rep. 101; 18 Fed. Rep. 636; *Field* v. *Sands*, 8 Bos. 685; *Conger* v. *Sands*, 19 How. Pr. 8; *Stephens* v. *Perrine*, 143 N. Y. 481; *Stephens* v. *M. B. Co.*, 13 App. Div. 271; *Hurwitz* v. *Hurwitz*, 10 Misc. Rep. 358; *Braem* v. *M. Nat. Bank*, 127 N. Y. 515; *Lamb* v. *Stone*, 28 Mass. [11 Pick.] 526; *Morgan* v. *Dawes*, 1 Hopk. Ch. 365; *Dunlevy* v. *Tallmadge*, 32 N. Y. 457; *Reed* v. *Darrow*, 2 Edw. Ch. 414;

*Wellington* v. *Small*, 57 Mass. [3 Cush.] 150 ; *Adler* v. *Fenton*, 24 How. [U. S.] 407 ; *Underwood* v. *Sutcliffe*, 77 N. Y. 58 ; *Kennedy* v. *Thorp*, 51 N. Y. 174 ; *Porter* v. *Williams*, 9 N. Y. 142.) Ch. 314, L. 1858, does not apply. (*Pettibone* v. *Drakeford*, 37 Hun, 628.)

*Watson M. Rogers* for respondent. The plaintiff in the judgment was defeated in his effort to enforce it by execution through the fraudulent acts of the defendants.. For this he has a remedy at law. (*Yates* v. *Joyce*, 11 Johns. 136 ; *Adams* v. *Paige*, 7 Pick. 542 ; *Mott* v. *Danforth*, 6 Watts, 304 ; *Van Pelt* v. *McGraw*, 4 N. Y. 110 ; *Quinby* v. *Strauss*, 90 N. Y. 664 ; *Hodges* v. *Marks*, 3 Cro. Jac. 485 ; *Bentley* v. *Donnelly*, 8 Term Rep. 127 ; *Penrod* v. *Mitchell*, 8 S. & R. 522 ; *Kelsey* v. *Murphy*, 26 Penn. St. 78 ; *Findlay* v. *McAllister*, 113 U. S. 104 ; *Washburn* v. *Carthage Nat. Bank*, 86 Hun, 396–399 ; *Ætna Fire Ins. Co.* v. *Mayor, etc.*, 153 N. Y. 331 ; Broom Leg. Max. 146 ; *Kujek* v. *Goldman*, 150 N. Y. 176.) Neither defendant, by demurrer or answer, has raised the question of the plaintiff's capacity to sue. It can only be done so. (Code Civ. Pro. § 488, subd. 3 ; §§ 490, 1405, 2469, subd. 2 ; *Seaton* v. *Davis*, 1 T. & C. 91 ; *Perkins* v. *Stimmel*, 114 N. Y. 359–368 ; *Nanz* v. *Oakley*, 122 N. Y. 631 ; *Hall* v. *Sampson*, 35 N. Y. 274 ; *Hathaway* v. *Brayman*, 42 N. Y. 322 ; *Hamill* v. *Gillespie*, 48 N. Y. 556, 559 ; *Tremaine* v. *Mortimer*, 128 N. Y. 1 ; *Q. & N. B. B. Co.* v. *Hart*, 48 Hun, 393 ; *McCorkle* v. *Herrman*, 117 N. Y. 297, 302 ; *Mandeville* v. *Avery*, 124 N. Y. 377, 385 ; *Porter* v. *Williams*, 9 N. Y. 142 ; *Stephens* v. *Perrine*, 143 N. Y. 476 ; *Stephens* v. *M. B. Co.*, 13 App. Div. 268.) Authority is expressly given by chapter 314, Laws of 1858, as amended by chapter 740 of the Laws of 1894, to "*any*" receiver of the property of an insolvent individual or corporation to disaffirm and treat as void all transfers made in fraud of the rights of any creditor. (*Stephens* v. *M. B. Co.*, 13 App. Div. 268 ; *Stiefel* v. *Berlin*, 28 App. Div. 103.)

VANN, J. This action is an excursion by a receiver into a
new field. It is an action at law brought by the plaintiff, as
receiver in supplementary proceedings, to recover damages
from the judgment debtor and another for a fraudulent con-
spiracy to prevent the collection of the judgment creditor's
debt, which, although in existence, was not in judgment at the
time the conspiracy was formed and executed. As the author-
ity of the plaintiff to maintain such an action is challenged, it
becomes necessary to examine the statute authorizing his
appointment and governing his powers.

The Code of Civil Procedure, by section 2464, authorizes
the appointment of "a receiver of the property of the judg-
ment debtor." Section 2468 provides that "the property of
the judgment debtor is vested in a receiver, who has duly
qualified, from the time of filing the order appointing him,"
subject to certain exceptions not now material. When the
receiver's title to personal property has thus become vested
"it also extends back by relation, for the benefit of the judg-
ment creditor in whose behalf the special proceeding was insti-
tuted, * * * so as to include the personal property of the
judgment debtor, at the time of the service of the order." (Id.
§ 2469.) If it appears from due proof that the judgment
debtor has in his possession, or under his control, money or
personal property belonging to him, or that a third person
has possession or control of the same, and the right of the
judgment debtor is not substantially disputed, an order may
be made by the judge in charge of the proceeding in his dis-
cretion, for the payment of the money or the delivery of the
property to the sheriff or to a receiver if one has been
appointed. (Id. § 2447.) The receiver is subject to the con-
trol of the court out of which the execution was issued
(§ 2471), and his duties, subject to such control, are to take
possession of the tangible property of the judgment debtor,
not exempt by law, and convert it into money to the best
advantage; to collect the intangible assets, and out of the pro-
ceeds to pay fees and expenses and apply the balance upon
the debt of the judgment creditor, returning the remainder, if

any, to the judgment debtor. He represents the judgment debtor, and can bring any action relating to property rights that he might bring because he has his title. He also represents the judgment creditor in equity to the extent necessary to bring actions in the nature of a creditor's bill to set aside fraudulent transfers, for "he comes in by the act of the law and not by the act of the party." (*Porter* v. *Williams*, 9 N. Y. 142, 149; *Underwood* v. *Sutcliffe*, 77 N. Y. 58, 62; *Mandeville* v. *Avery*, 124 N. Y. 376, 385.) He is trustee for the judgment creditor to receive, and to remove obstacles by equitable procedure so that he may receive, the property of the judgment debtor and apply the proceeds on the debt which is the foundation of his authority. He takes the legal title to all the personal property of the debtor, whether in his own hands or in the hands of others, as of the date of the service of the order in supplementary proceedings, but not so as to affect the title of a purchaser in good faith or the payment of a debt in good faith. (Code Civil Pro. § 2469; *McCorkle* v. *Herrman*, 117 N. Y. 297, 302.) The title to property, however, transferred by the judgment debtor in fraud of creditors, prior to the service of the order for examination upon him, is good as against the receiver until he has caused the transfer to be set aside by a decree in equity. (*Bostwick* v. *Menck*, 40 N. Y. 383.) Until then he has an equitable right but no title. While the title of a fraudulent transferee is not good as against the sheriff armed with an execution against the property of the judgment debtor, as he may levy upon the property, sell it and run the risk of being able to prove the fraudulent nature of the transaction when he is sued, it is good as against the receiver, who has no legal process, until the transfer is formally set aside. The receiver can maintain an action against the judgment debtor in conversion, where the debtor has converted property after it became vested in the receiver (*Gardner* v. *Smith*, 29 Barb. 68); but it has been held that he cannot maintain replevin to recover articles of personal property which were transferred by the debtor in fraud of his creditors, prior to the appoint-

ment of the receiver. (*Pettibone* v. *Drakeford* (37 Hun, 628.)

In *Metcalf* v. *Del Valle* (64 Hun, 245) it was held that the title of a receiver in supplementary proceedings extended only to the property which the judgment debtor had when the receiver was appointed, and that it did not include property which the judgment debtor had fraudulently transferred prior to such appointment. When the case reached this court it was affirmed on the authority of *Bostwick* v. *Menck* (*supra*). So an administrator does not take legal title to chattels fraudulently assigned by his intestate, and can only avoid the transfer by proceeding in equity under the statute authorizing it. (*Osborne* v. *Moss*, 7 Johns. 161; *Brownell* v. *Curtis*, 10 Paige, 210.)

If the plaintiff can maintain this action at law, it must be because the title to the cause of action vested in him by virtue of his appointment as " receiver of the property of the judgment debtor." (Code Civil Pro. § 2464.)

What does a receiver in supplementary proceedings receive? He receives simply " the property of the judgment debtor," according to the express command of the statute. The title to the property of the judgment debtor is vested in him, and he is entitled to " receive " all of it, except such as is exempt from execution. The property belonging to, and in the possession of, the judgment debtor he is entitled to take without legal process, and, if the judgment debtor resists, to apply to the court for an order compelling him to deliver it. In addition to this, however, he has an equitable right to property fraudulently transferred by the judgment debtor, and can reinstate the title in him by a suit in equity and then receive it. If such property is voluntarily surrendered by the transferee upon demand, he is entitled to take it and dispose of it the same as if it had never been transferred. If it is not voluntarily surrendered, he cannot take it by force, but by virtue of the statute he is entitled to maintain an action in equity to set aside the fraudulent transfer, so that he may receive the property which in equity and good con-

science belongs to the judgment debtor. Such an action, however, cannot be maintained in a County Court for the want of jurisdiction of an equitable action of that kind. (Code Civ. Pro. § 340.) There is no statute and no rule of law that entitles him to "receive" anything that does not belong to the judgment debtor, who, in the case before us, had parted with title, possession, and the right of possession before the receiver was appointed. He is not entitled to receive any right of action belonging to the judgment creditor, although he is authorized to bring an action to set aside fraudulent transfers, the same as the judgment creditor himself might have done. We find no case holding that he represents the judgment creditor to the extent of bringing an action at law, even if the judgment creditor might have brought one, to recover damages for a fraudulent conspiracy to prevent the collection of his debt, carried into effect before the proceedings were commenced which resulted in the appointment of the receiver. He is the receiver of the property of the judgment debtor, not of the judgment creditor, and such a right of action is the property of the latter, not of the former. He represents the creditor only with reference to the property of the debtor, who cannot have a cause of action against himself. The defendants did nothing to affect the title of the receiver after his appointment, for the fraudulent transfer was complete even as to possession before supplementary proceedings were commenced. What they did would be ineffectual as against his equitable right to the property transferred when asserted in the proper manner, for he could follow the property in equity, at least until it reached the hands of a *bona fide* purchaser. (Code Civ. Pro. § 1871.) So far, however, as the action of the defendants gave a right of action at law to any one, it was to the judgment creditor only, and that right did not pass to the plaintiff on his appointment, nor did he represent the creditor with reference to it. The judgment creditor could not assert that right through the plaintiff, who could receive under the statute the property of the judgment debtor only. The receiver could not receive a right of action for a tort that accrued, if

at all, before the judgment was recovered upon which his title
was founded.

Whether the judgment creditor could maintain an action at
law to recover damages on account of the fraudulent transfer
made before he recovered judgment or had any lien, legal or
equitable, it is not necessary to decide. The following cases
are relied upon by the plaintiff as justifying such an action :
*Yates* v. *Joyce* (11 Johns. 136) ; *Van Pelt* v. *McGraw* (4 N.
Y. 110) ; *Quinby* v. *Strauss* (90 N. Y. 664) ; *Findlay* v. *McAl-
lister* (113 U. S. 104). On the other hand, the defendants
insist that such an action cannot be maintained, because their
acts, when done, did not injure any security of the creditor,
for he had none at the time, and in support of this position
they cite the following : *Braem* v. *Merchants' National
Bank* (6 N. Y. Supp. 846 ; affirmed, 127 N. Y. 508) ; *Adler* v.
*Fenton* (65 U. S. 407) ; *Hutchins* v. *Hutchins* (7 Hill, 104) ;
*Brinkerhoff* v. *Brown* (4 Johns. Ch. 671) ; *Hurwitz* v. *Hur-
witz* (10 Misc. R. 353). We do not think it necessary to decide
the question in this case, because, as we have already held,
such a right of action could only be asserted, if at all, by the
creditor himself in his own name and not through a receiver.

It is, however, insisted that this action is authorized by
chapter 314 of the Laws of 1858, as amended by chapter 740
of the Laws of 1894. It has been held that the class of
receivers referred to in this act are those who are vested as
such with all the property of the insolvent for the benefit of
all the creditors and not to a receiver appointed in supple-
mentary proceedings for the benefit of a single creditor only.
(*Pettibone* v. *Drakeford*, *supra*.) This, if not so held, was
plainly intimated in *Underwood* v. *Sutcliffe* (77 N. Y. 58, 62).
But, whether this is so or not, we do not think that said stat-
ute authorizes any receiver, however appointed, to maintain
such an action as the one under consideration. This action
does not attempt to follow the property and recover it or the
value thereof so that the receiver may apply the proceeds
upon the debt in question. It is not an action to replevy the
property or to recover damages for the conversion thereof or

to set aside the fraudulent mortgage. It treats the property as a mere incident to the cause of action, and is founded on the theory of a fraudulent conspiracy to prevent the collection of a debt held at the time by a simple contract creditor. The statute under consideration enables a receiver or other trustee of an estate to follow specific property transferred in fraud of the rights of creditors, and makes the persons receiving such property liable in the proper action for the same or its value. This liability is not imposed upon the one making the fraudulent transfer, but upon the transferee alone, and, hence, it is evident that this action, which seeks to make both liable, the one as much as the other, was not brought under that statute. The property transferred is not the subject of the action, but the conspiracy to defraud and the transfer pursuant thereto. The result of the action, if successful, would not affect the property, for the plaintiff could not take it nor sell it nor do anything with it that he could not have done if the action had not been brought.

The plaintiff claims that, as the defendants did not raise the question of his capacity to sue by demurrer or answer under sections 488 and 490 of the Code of Civil Procedure, they thereby waived the right to claim that the receiver cannot maintain this action. There is a difference between capacity to sue, which is the right to come into court, and a cause of action, which is the right to relief in court. Incapacity to sue exists when there is some legal disability, such as infancy or lunacy or a want of title in the plaintiff to the character in which he sues. The plaintiff was duly appointed receiver and has a legal capacity to sue as such, and, hence, could bring the defendants into court by the service of a summons upon them even if he had no cause of action against them. On the other hand, an infant has no capacity to sue, and, hence, could not lawfully cause the defendants to be brought into court even if he had a good cause of action against them. Incapacity to sue is not the same as insufficiency of facts to sue upon. The Code of Procedure contained provisions similar in all respects now material to the sections above cited from

the Code of Civil Procedure, and referring to those provisions in *Bank of Havana* v. *Magee* (20 N. Y. 355, 359) this court, through Judge DENIO, said : " Certain persons, as infants, idiots, lunatics and married women, cannot sue except by guardians, next friends, committees, or in the case of married women, by joining their husbands in certain cases. This, I think, was what the provision refers to," etc. We think that the plaintiff had capacity to sue, but that his complaint stated no cause of action of which the County Court had jurisdiction.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

All concur, except O'BRIEN, J., not voting, and MARTIN, J., not sitting.

Judgment reversed, etc.