## In the Matter of the Application for a Certificate of Incorporation of NEW YORK SOUL CLINIC, INC.

Supreme Court, Special Term, Bronx County, August 23, 1955.

*James E. Bennet* for petitioner.

MATTHEW M. LEVY, J.  A certificate of incorporation has been submitted to me, pursuant to article 9 of the Religious Corporations Law of the State of New York, with the request that I " do hereby give my approbation of the foregoing Certificate of Incorporation of the New York Soul Clinic, Inc. and hereby consent to its filing ".  The signatories express their desire " to associate ourselves together for the purpose of founding and continuing a free church pursuant to section 180 of the Religious Corporations Law."

Section 180 provides that " such certificate shall not be filed, unless with the written consent and approbation of a justice of the supreme court of the district in which any such church shall be intended to be established, to be indorsed on such certificate ". Unquestionably, the Legislature expected— as it had a right to do — that any justice of the Supreme Court to whom a proposed certificate is submitted would in a proper case give his official " consent and approbation "; and that where the proposed certificate was, in any material respect inadequate or improper,

judicial sanction would by him be denied. But I must say that the language used in the statute does not seem to me to be quite felicitous — particularly in view of the delicacy involved in the matter of one's individual religious convictions, be that one judge or layman.

" Approbation " ordinarily denotes approval; it normally connotes commendation. Does the statute mean, when a justice of the Supreme Court is called upon to give his " consent and approbation " to the filing of a certificate of incorporation under this chapter of the Religious Corporations Law — and he does so — that he thereby approves or commends the faith or doctrine set forth in the certificate? I would say " undoubtedly not ". For the court must view the statutory imposition of judicial responsibility in the light of the fortunately universal recognition in this democracy that one's individual religion is truly a highly personal matter, and in the light, too, of the historic mandates of our governing constitutions: " Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; " (U. S. Const., 1st Amendt.), and " [t]he free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind " (N. Y. Const., art. I, § 3). The approval or rejection of one creed or another is a matter of individual heritage or environment or selection — it is not, happily in this country at least, a matter for judicial action. In any determination I make, therefore, as to the requested " consent and approbation " — whether given or withheld in this or any other case — there is intended no approval (or disapproval) of any particular religion or church, no commendation (or lack of it) as to any specific theology. In short, whatever my personal views may be as to the merits of any faith projected in a proposed certificate of incorporation, my function as to " consent and approbation " would not be that of an individual, but that of a justice of the Supreme Court of the State of New York, charged with grave judicial responsibility — not to be exercised as a matter of personal choice, but on the basis of official duty and sound judicial discretion.

With that caveat in mind — expounded at the very threshold of my consideration of the application — I deny permission to file the present certificate, and in so doing I want to make clear that I do not (indeed, I would not and can not) seek to prevent or restrain the free exercise and enjoyment of any religious profession or worship. The reasons for my determination are twofold. Firstly, in my view, the name or title by which the society

is to be known is inappropriate for a religious corporation as it is defined in the laws of this State. And, secondly, the purposes of the society are not adequately stated in the proposed certificate.

*Firstly.* The society intends to operate as a religious corporation, and, thus incorporated, intends to found and continue churches in this State. The statute defines the terms. A " ' religious corporation ' " is " a corporation created for religious purposes "; an " ' incorporated church ' " is " a religious corporation created to enable its members to meet for divine worship or other religious observances " (Religious Corporations Law, § 2). The proposed corporate name — " New York Soul Clinic, Inc." — does not indicate adequately, if at all, that the society is created for religious purposes or that it is a church of any kind. The word " Clinic ", particularly, has such a commonly accepted meaning that one would not ordinarily say that it connotes the idea of church or religion. Whatever it may be taken to mean in certain esoteric spheres, a clinic is generally thought of as having to do with the teaching and practice of some phase of medical therapy. Even when used in connection with the word " soul " there is the likelihood of misconception of the purposes and functions of the organization, particularly in the minds of some of the areas of our varied population. It is my view that in the diversified fields of religious beliefs — as in other spheres of disagreement — the propagandist for his faith should fly his standard high and label his preachments honestly and frankly — and then submit his views to the vicissitudes of free thought, scrutiny, analysis, discussion and conviction.

And that brings me (both logically and chronologically) to the *second* ground for rejection of the certificate. The statute requires that the certificate state " the purpose of its organization ". The subscribers here state that the " purpose " of the New York Soul Clinic, Inc., is " to found and continue one or more free churches." That statement is not enough. Article 9 of the Religious Corporations Law, under which this certificate was presented, deals only with " free churches ". A free church is one in which — as provided in one of the sections of that article (Religious Corporations Law, § 183) — no charge is generally to be made for the seats and pews of the church. It may be that the desire and intent of the proposed society is to establish a free church — and in that sense, perhaps, that is its " purpose." But what religious doctrine this free church elects to expound and teach is nowhere stated. I do not mean by that that the creed thus purposed must necessarily be one of the

established faiths. Religious creeds, old and new, are constitutionally protected in our State and nation. What I do mean to say is that whatever the basic creedal purpose of this free church, the petitioners should adequately formulate and articulate it in the certificate presented for filing. And there is nothing in the present certificate which indicates what the purpose of the incorporators is.

Submitted, at my request, as background aid in the study of this matter, were several documents having to do with (what appears to be) a parent or associate society, organized in California *. Among them is the certificate of its incorporation and several issues of its periodical known as " The Soul Clinic." The " purposes "— that is to say, the general creed and procedures of the California organization — are stated in the certificate of incorporation to be, among other things, to " establish, conduct and maintain a clinic and branches thereof for the training of men and women in the science of personal evangelism, the teaching and preaching of the truth of the Bible, the Administration of the ordinances of the New Testament and the evangelism of the World to the Lord Jesus Christ; to establish, conduct and maintain a training center and/or training centers and schools in the furtherance of such work; to do any and all things necessary, expedient or convenient in the teaching and preaching of the Bible, the training of men and women in personal Evangelism and the administration of the ordinances of New Testament; to hold classes, seminars, religious meetings, and do any and all things necessary, or convenient to spread the teachings of the Lord Jesus Christ throughout the world; to establish, conduct and maintain educational centers, schools and clinics for the teaching of religion to men, women and children throughout the world." The publication referred to indicates that in addition to engaging in its activities in this country generally, the California group propagates and propagandizes, preaches and proselytes, in other areas, by way of their " ASC [American Soul Clinic] Missionaries on The March ", as follows: " Japan, Mexico, Great Britain, Portugal, South Africa, Formosa, Philippines, Bolivia, Israel, Puerto Rico, Guam, Virgin Islands, Korea, Hawaii, Europe, American Indians, Deep South, Jews ". It thus appears that the data emanating from the California society are not, in respect of purpose, inadequately stated. It is not for

---

* It does not appear that, in California, it is necessary to have judicial sanction for a certificate of incorporation such as this to be filed. The procedure seems to be entirely administrative in the offices of the secretary of state and the county clerk.

me to suggest what statement of purpose should be presented by the petitioners to this court or what precise statement would be deemed adequate by the court. Suffice it to say that, in my view, the basic charter of a religious corporation in this State — whose certificate of incorporation must have " indorsed on such certificate " itself the " written consent and approbation of a justice of the supreme court of the district in which any such church shall be intended to be established " (Religious Corporations Law, § 180) — should be complete in itself, and it should not be necessary for one to go beyond the four corners of the instrument to ascertain the fundamental purpose of the proposed society.

For the reasons stated, the application for judicial consent and approbation for the filing of the certificate of the New York Soul Clinic, Inc., pursuant to the provisions of article 9 of the Religious Corporations Law, is denied.

