Matthew M. Levy, J.
Usually, a defendant in a serious criminal case would protest that he is being deprived of a basic constitutional right were the Trial Judge to proceed, over the defendant’s objection, to hear the case without a jury. The instant application presents just the reverse. Here, we have a case of a defendant, charged with the commission of a crime, urging that a fundamental right constitutionally established, is being violated in that the Trial Judge refuses to permit him to waive a jury. To protect that right, this proceeding was instituted before me, in pursuance of article 78 of the Civil Practice Act, by way of a joint writ of prohibition and of mandamus against a Judge of the County Court of the County of The Bronx having jurisdiction in the premises and who has denied the defendant’s request for a waiver of a trial by jury. The petitioner seeks to prohibit the respondent from proceeding with the trial with a jury and to command him to permit a nonjury trial of the indictment against the petitioner. No briefs have been submitted by counsel and no precedential authority in point has been unearthed by me.
The basic facts as presented to me are these: During the course of one of the juvenile gang fights about which the public have heard and read so much lately, a youngster was shot. The petitioner, an infant 16 years of age, did not trigger the weapon which was used and he had never been in possession of it. He was not at the actual scene at the time of the shooting, but a block away leaving the scene. With five others, he was indicted for first degree assault, several counts of assault in the second degree, and for violation of the Sullivan Law (Penal Law, § 1897). A companion indictment charged the other five (not the petitioner) with an additional crime of first degree assault and related crimes which arose out of an incident that took place about one hour after the alleged occurrence giving rise to the charges contained in the first indictment. The indictments were directed by the County Court to be tried jointly. The petitioner moved in the County Court for a severance, seeking a separate trial, which was denied. Subsequently, the petitioner sought in the County Court to waive a jury trial. It seems that the learned County Court Judge, before whom the criminal cases are to be tried, denied the application, on the ground that, if waiver were permitted, the defendant would be accomplishing indirectly what he was unable to accomplish directly — namely, *673 a severance of the trial of the indictments insofar as he was concerned.
The principal question to he decided here is whether a defendant in a criminal case has the absolute right to waive a jury-trial or whether an application by the defendant therefor, duly and knowingly made, is subject to denial in the discretion of the court. I shall first, however, dispose of several preliminary matters.
The petitioner is a minor. As such, does he have standing to institute and prosecute this special proceeding on his own and in his own name? No point was made of this by the respondent either in the opposing affidavit or on oral argument. Nevertheless, I deem it appropriate that this question be considered and resolved at the outset.
While section 201 of the Civil Practice Act states that “ [w]here an infant has a right of action he is entitled to maintain an action [or (?) special proceeding (Civ. Prac. Act, §§ 4, 5, 7, subd. 8)] thereon, and the same shall not be deferred or delayed on account of his infancy ”, the next section provides that “ [w]hen an infant is a party he must appear by a guardian ad litem who shall be appointed by the court in which the action is brought or about to be brought ” (Civ. Prac. Act, § 202). Other provisions prescribe the procedures for such appointment upon application of a person in interest (Civ. Prac. Act, §§ 203, 204; Rules Civ. Prac., rule 40). But the omission to procure such appointment before commencement of this proceeding is not a jurisdictional defect. “ The supreme court may appoint a guardian ad litem or special guardian for an infant * * * at any stage in any action or proceeding, when it appears to the court necessary for the proper protection of the rights and interests of such infant ” (Civ. Prac. Act, § 207; italics supplied). I am of the view that the petitioner should be aided here by a guardian ad litem or a special guardian; and, accordingly, application should be made therefor, and such an appointment will be made nunc pro tunc and without prejudice to the proceedings already had herein. (Rima v. Rossie Iron Works, 120 N. Y. 433; Holmes v. Staib Abendschein Co., 198 App. Div. 354.)
The second preliminary problem is whether this special proceeding is an appropriate remedy. I hold that it is. As I have said, the proceeding is in the nature both of prohibition and of mandamus. It is not in the nature of a writ of certiorari; nor is it intended “ to review a determination ” “ made in a criminal matter ” (Civ. Prac. Act, § 1285, subd. 2). In one aspect it is negative in character; in the other, affirmative. It seeks, insofar as the petitioner is concerned as a defendant in the criminal *674 prosecution against Mm, to enjoin the respondent from pro~ ceeding with a jury trial; it seeks, too, to command the respondent— again, only insofar as the petitioner is involved — to proceed with that trial without a jury. If a court or a judge having criminal competence is about to exercise a power that it or he does not possess, and it affirmatively .appears that this will be done in violation of the defendant’s constitutional guarantees or privileges, the defendant, as the party aggrieved, should be, and I think is, entitled to invoke the. undoubted jurisdiction of the Supreme Court to restrain such unconstitutional excess of assumed power and to command that the power conferred be utilized within constitutional limits. (Matter of Hogan v. Court of General Sessions, 296 N. Y. 1, 8-9.)
The petitioner asserts (and his allegation’s are. unrefuted) that he has been incarcerated by direction of the County Court since November 4, 1957 in default of $10,000 bail; that he is indigent; that he was and is unable to post bail; that, in the event of an adverse jury verdict, he would be financially unable to prosecute an appeal raising the constitutional point in issue, or to arrange for bail pending appeal; and that unless he' obtain the relief now prayed for, the result would be that he would be. deprived of his freedom for a long period of time awaiting the ultimate disposition of the constitutional issue now urged. It is my opinion that the determination made by the respondent cannot be “ adequately ” reviewed by an appeal (Civ. Prac. Act, § 1285, subd. 4), and that, if in fact the petitioner is being deprived of his constitutional rights or privileges, he is. entitled to the protection which the present proceeding affords, him.. Doubtless, the error, if any there be, can be corrected on appeal, but, as I see it, the proceeding now invoked furnishes a more effective remedy in the circumstances here presented.
A third preliminary matter must be disposed of. The respondent was required by section 1291 of the Civil Practice Act to serve and file a verified answer to the petition, which answer should have “ contain [ed] proper denials and statements of new matter, as in an action, and must [have] set forth such facts as' may be pertinent and material to show the grounds of the action taken by the respondent which is complained of. * * * The respondent shall annex to the answer filed with the clerk of the court a certified transcript of the record of proceedings subject to review or consideration. * * * The respondent shall also serve and submit with the answer affidavits, made by a person having knowledge of the facts, or other written proof, showing such evidentiary facts as shall entitle Mm to a trial of any issue of fact.” The statute goes on to provide that *675 “ [w]here the proceeding is brought to restrain a body or officer exercising judicial or quasi-judicial functions from proceeding without or in excess of jurisdiction in favor of another party, the latter may serve and file a separate answer, * * * or annex to the body’s or officer’s answer an instrument in writing, subscribed by him, to the effect that he adopts it and relies upon the matters therein contained as sufficient cause why the body or officer should not be restrained; in which case, the party shall thenceforth be deemed the sole respondent in the proceeding; except that a final order in favor of the petitioner must be directed against both the body or officer and the party.”
No answer was filed by the respondent. All that was submitted was an affidavit by an assistant district attorney in charge of the prosecution of the matter in the County Court. The affidavit did not contain a verbatim report of the proceedings before the County Judge, either in the body thereof or as an exhibit attached thereto. No point was, however, made by the petitioner of the respondent’s noncompliance with section 1291 (see Civ. Prac. Act, § 1297; Matter of Clifford v. Seaman, 278 App. Div. 667; Matter of Gardiner v. Harnett, 255 App. Div. 106, 107-108; Matter of Rotkiewicz v. Department of Mental Hygiene of State of N. Y., 283 App. Div. 458, 461, affd. 307 N. Y. 847).
In his affidavit, the assistant district attorney states that he is “ fully familiar with all the facts involved ” in the prosecution, and that “ [i]n denying the petitioner’s request that he be tried without a jury, the [County] Court in its discretion found that it was not constrained to grant same in view of the fact that that would be accomplishing indirectly what the petitioner was not able to accomplish directly, namely, a severance of his trial ”. Absent answer or transcript, I shall, of course, necessarily base my decision herein on the assumption that the respondent’s determination was grounded, without more, on the lone factor mentioned in the affidavit.
A fourth preliminary issue (which was argued by counsel) is that the petitioner’s motion for a severance of the trial of the indictment against him was duly denied by the County Court, and that, if the petitioner were to be permitted a nonjury trial for himself, he would thus obtain the severance desired by him (opposed by the prosecution and denied by the County Court), since the other defendants in that court are going to proceed to trial before Judge and jury. The answer is three-pronged: (1) It may be that, in the exercise of sound judicial discretion, the learned Trial Judge will grant a severance — in the light of the petitioner’s subsequent demand that he be tried without *676 a jury. (2) Although the District Attorney urged that a severance would have to follow, since it was not possible to try the consolidated criminal indictments before a jury with respect to some defendants and before a judge with respect to the petitioner, in my view that is not necessarily so. The indictments could be tried at one and the same time. All of the facts would be presented and heard at one trial; then jury and judge would respectively render verdicts with respect to the individual defendants. (Cf., in civil cases, United States v. Yellow Cab Co., 340 U. S. 543, 556-557.) I do not mean thereby to indicate that this procedure is in all situations convenient or wise, and I can envisage some difficult problems that may arise. (3) What I do mean to say is that it must quite certainly follow as a matter of course that, if a jury trial here is duly waived and a trial before the Judge alone is, therefore, mandatory upon court and prosecution, the fact that compliance with the Constitution might enable the petitioner to obtain the severance which, in the discretion of the court, had been denied him would not justify a deprivation of his constitutional right to a nonjury trial.
And thus I am brought at last to the principal issue: Is the petitioner entitled, as a matter of right, to waive a jury, or is waiver a privilege which he may enjoy only when allowed to do so within the discretion of the trial court ?
The United States Supreme Court, speaking through Mr. Justice Fbankfubtbb, pointed up the fallacy of the common-law theory denying to a defendant charged with crime the right, understandingly, to waive a jury trial: “ [T]he procedural safeguards of the Bill of Bights are not to be treated as mechanical rigidities. * * * When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny bim in the exercise of his free choice the right to dispense with some of these safeguards * * * and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense before a judge rather than a jury * * * is to imprison a man in his privileges and call it the Constitution ’ ’ (Adams v. United States ex rel. McCann, 317 U. S. 269, 279, 280).
However, while waiver of a jury in the trial of a civil suit has long been permitted by the Constitution of the State of New York, our Court of Appeals held, in an early decision, that a defendant in a criminal case could not waive his constitutional right to a jury trial (Cancemi v. People, 18 N. Y. 128, 138; see, also, People v. Cosmo, 205 N. Y. 91, 97). It was therefore deemed necessary that a constitutional amendment be adopted in order to effectuate a change. Such an amendment was proposed by the *677 Judicial Council in 1937. In its report, the council made the significant observation that, insofar as the defendant is concerned, 1 ‘ waiver permits him to avoid in many cases, especially where prejudice is likely to arise, the effect on the jurors’ verdict of sensational publicity. It further gives the defendant an opportunity to indicate his innocence by showing Ms willingness not to rely upon an emotional appeal to the jury ” (Third Annual Report of N. Y. Judicial Council, 1937, p. 111).
The proposal made by the council read that a jury trial may be waived “ by the defendant in all [noncapital] criminal cases ” 1 ‘ in the manner to be prescribed by law ’ ’. The amendment proposed by the Constitutional Convention the following year did not require (although it permitted) legislative implementation (see People v. Carroll, 3 N Y 2d 686 [per Burke, J.] affg. 4 A D 2d 537 [per Murphy, J.], affg. 7 Misc 2d 581 [per Sober, J.]). The convention proposal was duly adopted in 1938. That is the constitutional provision here involved. It is a part of the 1 ‘ Bill of Rights ”, is contained in section 2 of article I, and reads as follows: ‘ ‘ Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. A jury trial may be waived by the defendant in all criminal cases, except those in wMeh the crime charged may be punishable by death, by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense. The legislature may enact laws, not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver.”
Two very quick, but nonetheless important, observations will be made upon a reading of this clause. Firstly, the defendant’s constitutional right or privilege to be tried without a jury is not stated to be upon the condition that he be the lone defendant prosecuted, and that if there be others indicted or to be tried with him, he ipso fado loses that constitutional protection unless forsooth the others also effectively waive a jury trial. And secondly, unlike the requirements specified in subdivision (a) of rule 23 of the Federal Rules of Criminal Procedure (see Mason v. United States, 250 F. 2d 704) the “ consent ” of the prosecution is not needed — indeed, in New York, there is no provision that the prosecution is entitled as a matter of right to be heard on the defendant’s application. (See 25 Mich. L. Rev. 695.)
*678 That being so, the issue in the case at bar hinges fundamentally upon the concept of the word “ approval ” as used in the context of the amendment. The language is not to the effect that the “ waiver ” as such is subject to the “ approval ” of the Trial Judge — in the sense that he has a discretion which may be influenced by the desires, however proper, of the District Attorney or even the Judge’s just devotion to facilitating the administration of criminal justice in cases of multiple prosecutions. The amendment provides that there must be “ a written instrument signed by the defendant in person in open court before and with the approval” of the Judge. As I read this language, the framers of the amendment wanted only to see to it that the defendant knew what he wanted, and, therefore, that he had not only to execute the instrument in person and in open court, but was required to do so before the Judge and with the Judge’s approval. In short, it was the instrument and the act of execution of the instrument which needed approval of the Trial Judge, not the resulting waiver.
Moreover, other language in the amendment itself lends force to the view that the 11 approval ’ ’ referred to in the Bill of Bights can be withheld by the Judge only when he determines that the defendant does not adequately understand what he is doing when executing a waiver. The Legislature was simultaneously given power to enact laws (not inconsistent with the provision as to waiver then added to the Constitutional Bill of Bights [art. I, § 2]) “ governing the form, content, manner and time of presentation of the instrument effectuating such waiver ’ ’. (Italics mine.) It thus appears to me to have been the thought that it is the knowledgeable, considered and deliberate execution and submission of the instrument of waiver which is to be approved by the trial judge and which is then to be effective as a waiver. (See Waiver of Jury Trial in Felony cases: An Analysis of the Applicable Constitutional and Statutory Provisions in the 48 States, Institute of Judicial Administration, July 25,1955.)
Taking a cue from the recent opinion of Associate Judge Burke for a unanimous Court of Appeals in People v. Carroll (3 N. Y. 2d 686, 689, 690, supra) and having come to the conclusion that “ the constitutional provision speaks its meaning with sufficient clarity to make further inquiry unnecessary ”, I now take “ recourse ” “ to the traditional principles of construction ”, and in doing so, I find that they “ only serve to fortify the conclusion already reached ’ ’.
An examination of the proceedings before the body which proposed the amendment is one of those “ traditional principles *679 of construction ’ ’, and I shall now advert to the discussion in the 1938 Constitutional Convention. It is quite illuminating as to the reasons for and meaning of the language used. The late Judge Charles B. Sears was chairman of the Judiciary Committee of the Convention, and it was he who was in charge of the proposed amendment. During the debate, he had this to say: “ The proposal is a very simple one. It is intended to protect the rights of the defendant, to assure him by the necessity for an approval by the judge of full opportunity to understand what he is doing.” (New York State Constitutional Convention, 1938, Revised Record, vol. II, p. 1274.) In response to an inquiry by delegate (now United States District Judge) Edward Weineeld, who suggested that the words “ after consultation Avith counsel ’ ’ be inserted to protect the defendant seeking to waive a jury trial, Judge Sears said: “ We thought that that was sufficiently covered by requiring the approval of the judg*e, because Ave believe that you could rely upon the judge of the very court which had jurisdiction to try the case to see that the defendant Avas well advised * * ° All I can say is, it was carefully considered, and I believe that the protection which we provide in the requirement that it should be in open court, in the presence of the judge and with the judge’s approval, which was not included, I think, in your [delegate Weinfeld’s] amendment, that Avith those protections we had nothing to fear for such a defendant. That Avas our view” (ibid, pp. 1276-1277).
There was not the slightest intimation in the extended debate at the convention that the Trial Judge might, in his discretion, Avithold his 11 approval ” of a knowing and deliberate waiver, when the exercise of that discretion aaus dependent not upon the defendant’s not being fully aAvare of the effect of his waiver, but rather upon what, in the Judge’s view, would lend itself to the more expeditious administrative disposition of the public prosecution of crime. On the contrary, other comments in the debate that followed (ibid, pp. 1278-1286) indicated that the framers of the amendment understood that the function of the Judge, whose “ approval ” Avas to be required, was that of public counsel for and judicial adviser to the defendant, in the protection of the latter’s interests, Avhatever might be the objections by the prosecution or inconvenience to court procedures. (See Busch on Law and Tactics in Jury Trials, § 47, pp. 69-70.)
I am not unmindful of what Mr. Justice Sutherland said in Patton v. United States (281 U. S. 276, 312) to the effect that 11 [n]ot only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance *680 of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant But these remarks were made in 1930, eight years before the New York State Constitutional Convention. The able and experienced judges and lawyers who were the delegates to that, convention were, I may safely assume, not unaware of the Patton case. Yet, the amendment they proposed did not provide that, before a waiver might become effective, there must be consent of the prosecution and sanction of the court. It is, therefore, my view that it was intended by the amendment to provide that, when the defendant wishes to waive, the only function of the Trial Judge with respect to this matter is to protect the rights of the defendant, and when the Judge has ascertained that the defendant is fully aware of the nature and consequence of his request, and the defendant has signed his written statement in open court before the Judge, approval must follow. (Cf. Matter of New York Soul Clinic, 208 Misc. 612.) To hold otherwise is to ignore a relevant comment made by the Appellate Division in People v. Carroll (4 A D 2d 537, 540, supra) and here somewhat paraphrased: “ Judge Sears and Ms colleagues [on the Judiciary Committee] knew precisely what they were doing” at the Constitutional Convention of 1938.
Some question may come to mind as to whether my determination of the proceeding now before me must be final and conclusive, prohibiting a jury trial in the County Court of the indictment against the petitioner, or whether I should return the matter to the learned County Judge for his definitive action witMn the ambit of his constitutional duty in the premises. I have for myself no such doubt (cf. People ex rel. Fusco [Galgano] v. Ryan, 204 Misc. 861, 870). It is conceded that the respondent withheld his approval of the petitioner’s waiver solely because, as a matter of discretion, the respondent took into account only the expedient processes of the trial — in that the petitioner’s instrument of waiver, if given approval and effectuation, might result in a severance of the trial of the indictment against him. There is no proof before me that the respondent at any time made any inquiry as to whether the petitioner did or did not know the meaning or consequence of his act of waiver, or that the respondent came to the conclusion that the petitioner did not know or understand. In the circumstances, the petition is granted, but to the extent only, at this time, of remanding the matter to the County Court so that the learned *681 Judge there presiding may act accordingly. (Cf. Matter of Winkle v. Adams, 4 Misc 2d 441, 449.) The Constitution places the responsibility of approval upon the ‘ ‘ judge or justice of a court having jurisdiction to try the offense” with which the petitioner is charged. (Art. I, § 2.) The indictments are pending and are to be tried in the County Court. It is not for me, in the situation now presented, to substitute myself for the respondent and undertake the appropriate inquiry and determination implicit in the mandate of the constitutional provision. Suffice it to say that, in the exercise of his constitutional judicial responsibility, the respondent may desire to confer not alone with the petitioner, who is an infant of but 16 years of age, but also, among others, with his parents or nearest relatives, with his counsel and with his guardian herein to be appointed and hereinbefore referred to.
Settle order.